# EXHIBIT 1

# SUMMONS
## WARREN COUNTY COURT OF COMMON PLEAS
### 500 JUSTICE DRIVE - P.O. BOX 238
### LEBANON, OHIO 45036

**CASE # 21CV094098**

DEBRA NOLL

    VS

GREAT LAKES SERVICES LLC

**TO THE FOLLOWING NAMED PARTY:**

    GREAT LAKES SERVICES LLC
        DOING BUSINESS AS GREAT WOLF LODGE
    C/O COGENCY GLOBAL INC (STAT. AGENT)
    3958-D BROWN PARK DR
    HILLIARD, OH 43206

You have been named in a complaint filed in this court by the following party:

    DEBRA NOLL

**You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff if he has no attorney of record, a copy of your answer to this complaint within twenty-eight (28) days after service of this summons upon you, excluding the date of service. Your answer must also be filed with our court within three days after the service of a copy of the answer on the plaintiff's attorney.**

Failure to appear and present a defense to this complaint will result in a judgment by default being rendered against you for the relief demanded in the complaint.

The address of his/her attorney is:

    MATTHEW G. BRUCE, ATTORNEY AT LAW
    SPECTRUM OFFICE TOWER
    11260 CHESTER ROAD, SUITE 825
    CINCINNATI, OH 45246

    James L. Spaeth, Clerk of Courts
    500 Justice Drive - P.O. Box 238
    Lebanon, Ohio 45036

By: _____

    SHERRE J DAVIS, DEPUTY CLERK
    March 23, 2021

IF THE ABOVE NAMED DEFENDANT IS A CORPORATION PLEASE REFER TO OHIO REVISED CODE 4705.01.

COMMON PLEAS COURT
WARREN COUNTY, OHIO
FILED

2021 MAR 22 PM 2: 23

JAMES L. SPAETH
CLERK OF COURTS

## IN THE COURT OF COMMON PLEAS
## WARREN COUNTY, OHIO

DEBRA NOLL
4131 Fox Run, Apt 7
Cincinnati, OH 45255

-and-

JOHN SANDERS
4131 Fox Run, Apt 7
Cincinnati, OH 45255

                Plaintiffs,

       v.

GREAT LAKES SERVICES, LLC
d/b/a Great Wolf Lodge
2501 Great Wolf Dr.
Mason, OH 45040

    **Serve Also:**
    GREAT LAKES SERVICES, LLC
    d/b/a Great Wolf Lodge
    1255 Fourier Dr., Suite 201
    Madison, WI 53717

    -and-

    GREAT LAKES SERVICES, LLC
    d/b/a Great Wolf Lodge
    c/o Cogency Global Inc. (Stat. Agent)
    3958-D Brown Park Dr.
    Hilliard, OH 43026

                Defendant.

CASE NO. 21 CV94098

JUDGE: Peeler

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**JURY DEMAND ENDORSED HEREIN**

    Plaintiffs JOHN SANDERS and DEBRA NOLL, by and through undersigned counsel, as their Complaint against the Defendant, state and aver the following:

## PARTIES, JURISDICTION, & VENUE

1. Plaintiffs SANDERS and NOLL are residents of the city of Cincinnati, Hamilton County, state of Ohio.

2. Defendant GREAT LAKES SERVICES, LLC d/b/a GREAT WOLF LODGE, ("GLS") is a foreign, for-profit company that conducts business throughout the state. The relevant location of the events and omissions of this Complaint took place was 12501 Great Wolf Drive, Mason, Ohio 45050.

3. GLS is, and was at all times hereinafter mentioned, Noll's and Sanders' employer within the meaning of the Ohio Fair Employment Practice Act, R.C. § 4112 et seq., and the Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq.

4. Personal jurisdiction is proper over GLS pursuant to R.C. § 2307.382(A)(1), (2), and/or (3).

5. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

6. Venue is proper pursuant to Civ. R. 3(B)(1), (2), (3) and/or (6).

## FACTS

7. Sanders and Noll are former employees of GLS.

8. At all times noted herein, Sanders and Noll were qualified for their positions with GLS and could fully perform the essential functions of their jobs, with or without reasonable accommodations.

9. Noll is 65 years old and was in her late 50s and 60s throughout her employment with GLS, and is therefore in a protected class for her age.

2

10. Sanders is 68 years old and was in his 60s throughout his employment with GLS, and is therefore in a protected class for his age.

11. Noll has hypertension, a right foot injury, and a cancer diagnosis, and is therefore in a protect class for disability.

12. Sanders has depression, anxiety, and was diagnosed with liver and colon cancer prior to his employment with GLS, and is therefore in a protected class for disability.

13. Noll is a woman, placing her in a protected class for her gender.

14. GLS had notice of Sanders' and Noll's protected classes prior to them starting their employment and/or from early on in their employment.

## A. Plaintiff Noll's Employment with GLS

15. Noll worked as a server from in or around March 2011 until GLS unlawfully terminated her employment on or about September 28, 2020.

16. Noll was brought into a full-time position in or around 2012 or 2013 but was forced back into a part-time position in or around December 2015 seemingly without reason.

17. Noll suspected that she was moved back down to part-time and had her benefits removed because, as an older employee with disabilities, GLS did not want to pay for her health insurance, upon information and belief.

18. GLS moving Noll down to part-time was an adverse employment action against her.

19. Upon information and belief, Ashley Ryerson (20s) was not moved down to part-time alike Noll.

20. As time continued, Noll noticed that the younger servers, even ones temporarily home from college breaks, were receiving more hours than Noll.

21. Noll suspected that GLS was purposefully giving away her hours to the younger servers to remove her from full-time status.

22. This was disparate treatment against Noll and was based on her age and disabilities.

23. Throughout Noll's employment, she had numerous issues with her supervisors.

24. In or around late 2014, the food and beverage manager, Scott Flasch (30s), sexually harassed Noll.

25. Flasch made comments about the size of his penis and came onto every female employee that worked with him.

26. Noll reported these comments to another food and beverage manager, Aaron Young (30s) and the lead supervisor, Ryerson, but saw no remedial action taken.

27. After Noll made the report, Flasch began treating Noll worse than before in retaliation for her protect complaints against him.

28. GLS was aware of this discriminatory and retaliatory treatment against Noll.

29. In or around late 2019, managers Dan O'Brien (20s) and Tara Mays (20s) began cutting hours away from older GLS employees.

30. This decision came after the older employees complained to O'Brien and Mays about the younger employees being tardy or totally absent and asked that the attendance policies be more strictly enforced.

31. Noll and other older employees complained about this discriminatory behavior to HR representative Christina Moyer (early 50s) and beverage director Jeremy Lambert (early 50s).

32. After her additional protected complaints, O'Brien and Mays gave Noll around three extra hours each week, but not enough to qualify as a full-time employee.

33. Further, GLS removed scheduling duties from O'Brien and Mays and gave them back to Ryerson.

34. In or around March 2020, the COVID-19 pandemic swept across the United States and Ohio issued its Stay-at-Home Order. GLS shut down operation until June as a result.

35. Noll was the first part-time server brought back to work, despite the order being chose purportedly based on seniority and Noll being the most tenured employee at GLS.

36. Because of the pandemic and Noll's high-risk status due to her age and health issues, Noll was placed on a leave of absence shortly after.

37. As is GLS policy, Noll timely provided all requested medical information to GLS and was assured that she would have no issues returning to work in twelve weeks or extended the leave if necessary.

38. However, that narrative suddenly changed when Moyer told Noll she would need to resign and reapply for a position if there was a job open at the time she wanted to return.

39. This was a common, reoccurring excuse that GLS used against its older or disabled employees if they needed to take any sort of leave.

40. On or around the end of August 2020, food and beverage manager Mays told Noll that if she did not return on September 14, 2020, she would have to resign and reapply.

41. Noll requested additional leave, as her doctor felt it was not time for Noll to return, but her request was denied.

42. Noll's friend had requested the additional leave and it was approved.

43. When Noll emailed to ask why her friend's extended leave had been approved but hers was denied, Moyer denied that her friend had received the extended leave. This was a protected complaint.

44. Noll forwarded the email to food and Lambert.

45. Moyer's contention that she denied Noll's friend extended leave was false.

46. Moyer only denied extended leave to the employees with medical conditions and who had provided doctors' notes.

47. On or around September 14, 2020, Noll forwarded her managers a message from her doctor stating she could not return to work yet because of her high-risk status.

48. Moyer confirmed that she received Noll's email.

49. On or about September 28, 2020, Noll's employment was terminated citing falsely and pretextually that she had not responded to GLS's requests for more information related to her doctor's note.

## B. Plaintiff Sanders' Employment with GLS

50. Plaintiff Sanders worked part-time at GLS as a busser and server from Autumn 2018 until GLS constructively terminated his employment on or around Autumn 2019.

51. Sanders originally found the position with GLS through Noll, and his more than ten years of experience working in the restaurant industry helped get him a busser position.

52. Roughly six months into his employment, in or around early 2019, Sanders requested to move into a serving position as the bussing position was hard on his body.

53. Sanders was undergoing chemotherapy treatment at the time, which caused his body to tire quickly.

54. Sanders asked Ryerson about the issue, and Ryerson began scheduling sanders for serving shifts in addition to bussing shifts.

55. Sanders' requests to Ryerson gave notice to GLS about his disability related to his chemotherapy treatment.

56. In or around February 2019, O'Brien and Mays became Sanders' immediate supervisors.

57. Immediately, Sanders noticed disparate treatment.

58. O'Brien and Mays heavily favored younger employees and would place them on the schedule for significantly more shifts that older employees irrespective of the employee's tenure with GLS or experience overall.

59. When Sanders began to notice his shifts were being given to younger employees, he spoke with O'Brien about getting more serving shifts.

60. O'Brien flatly refused to place Sanders in serving shifts telling him that he would have to directly apply for a server position before he could start working serving shifts.

61. This was a refusal to promote Sanders, and an adverse employment action.

62. GLS was aware of this discriminatory treatment against Sanders.

63. O'Brien stuck by this, despite Sanders having worked serving shifts for months by this time in order to accommodate his disability.

64. Disparately, O'Brien allowed multiple younger, able-bodied bussers to move from bussing to serving positions without reapplying.

65. Because of this direct, unashamed, disparate treatment from GLS by and through its management, and because of his disabilities and age, Sanders could not take it any longer and resigned.

66. Sanders resigned under circumstances under which any reasonable person would also have no choice but to resign.

67. Sanders' resignation was a constructive termination and an adverse employment action against him.

68. As a result of the above, Noll and Sanders have suffered damages, including economic damages, as well as severe emotional distress, anxiety, and depression.

## COUNT I: AGE DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq. (Plaintiff Noll Only)

69. Noll restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

70. Noll is over 40, and thus is in a protected class for her age.

71. R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

72. GLS treated Noll differently than other similarly situated employees based upon her age.

73. GLS' termination of Noll's employment was an adverse employment action against her.

74. GLS' purported reason(s) for Noll's employment termination was pretextual.

75. GLS actually terminated Noll's employment due to her age.

76. GLS violated R.C. § 4112 et seq. by terminating Noll's employment because of her age.

77. GLS violated R.C. § 4112.02 and R.C. § 4112.99 by treating Noll differently from other similarly situated employees outside her protected class.

78. GLS violated R.C. § 4112.02 and R.C. § 4112.99 by applying its employment policies in a disparate manner based on Noll's age.

79. GLS violated R.C. § 4112.02 and R.C. § 4112.99 by applying its disciplinary policies in a disparate manner based on Noll's age.

80. Noll has incurred emotional distress damages as a result of GLS' conduct described herein.

81. As a direct and proximate result of GLS' acts and omissions, Noll has suffered and will continue to suffer damages.

8

## COUNT II: AGE DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.
### (Plaintiff Sanders Only)

82. Sanders restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

83. Sanders is in a protected class for his age.

84. R.C. § 4112 provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

85. During his employment with GLS, Sanders was subjected to offensive and harassing conduct based on his age from his superiors, coworkers, and/or customers.

86. Defendant knew or should have known of the harassing conduct against Sanders.

87. Defendant condoned, tolerated and ratified this harassing conduct.

88. This harassing conduct was severe and/or pervasive.

89. This harassing conduct was offensive to Sanders.

90. This harassing conduct would also be offensive to any reasonable person.

91. This harassing conduct interfered with Sanders' ability to perform his job duties.

92. Customers and coworkers harassed Sanders based on his age. GLS had knowledge of this harassment and failed to take any corrective or remedial action.

93. This harassment was based on Sanders' age.

94. This harassing conduct was so severe and pervasive that it materially altered the conditions of Sanders' employment.

95. Sanders, with no other reasonable choice, was then forced to resign his employment.

96. Any reasonable person in Sanders' place would also have no choice but to resign due to the conduct.

97. Sanders' resignation was a constructive termination.

98. Defendant treated Sanders differently than other similarly situated employees based upon his age.

99. Defendant violated R.C. § 4112 by treating Sanders differently from other similarly situated employees outside his protected class.

100. Defendant violated R.C. § 4112 by applying its employment policies in a disparate manner based on Sanders' age.

101. Defendant violated R.C. § 4112 by applying its disciplinary policies in a disparate manner based on Sanders' age.

102. Sanders incurred emotional distress damages as a result of Defendant's conduct described herein.

103. As a direct and proximate result of Defendant's failure to promote Sanders based upon age discrimination, Sanders has suffered and will continue to suffer damages.

## COUNT III: FAILURE TO PROMOTE BASED ON AGE DISCRIMINATION
### (Plaintiff Sanders Only)

104. Sanders restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

105. At all times relevant, Sanders was a member of a statutorily-protected class under R.C. § 4112.14(B) for his age.

106. During his employment, Sanders attempted to be promoted to a server at GLS.

107. Defendant required Sanders apply for this promotion when it did not require applications for this promotion to other employees similarly-situated to Sanders.

108. Sanders was fully qualified for this opportunity.

109. Sanders was not given any interview for this position.

110. Defendant gave no reason for the failure to promote or interview Sanders.

111.    Alternatively, Defendant's reason for failure to promote Sanders was pretextual.

112.    Defendant actually failed to promote Sanders based on his age.

113.    Sanders' age was a determinative factor in Defendant's decision not to promote Sanders.

114.    Upon information and belief, Defendant promoted people outside Sanders' protected age class in place of Sanders.

115.    Defendant violated R.C. §4112.02 and R.C. § 4112.99 when it failed to promote Sanders based on his age.

116.    As a direct and proximate result of Defendant's conduct, Sanders has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.
### (Plaintiff Noll Only)

117.    Noll restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

118.    Noll is disabled for reasons described supra and is thus in protected classes for her disabilities.

119.    R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

120.    GLS treated Noll differently than other similarly situated employees based upon her disabilities.

121.    GLS violated R.C. § 4112.02 and R.C. § 4112.99 by treating Noll differently from other similarly situated employees outside her protected class.

122.     GLS violated R.C. § 4112.02and R.C. § 4112.99 by applying its employment policies in a disparate manner based on Noll's disabilities.

123.     GLS violated R.C. § 4112.02 and R.C. § 4112.99 by applying its disciplinary polices in a disparate manner based on Noll's disabilities.

124.     GLS violation R.. § 4112.02 and R.C. § 4112.99 by terminating Noll's employment because of her disabilities.

125.     GLS violation R.C. § 4112.02 and R.C. § 4112.9 by actually terminating Noll's employment because of her disabilities.

126.     As a direct and proximate result of GLS' acts and omissions, Noll has suffered and will continue to suffer damages.

## COUNT V: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq. (Plaintiff Sanders Only)

127.     Sanders restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

128.     Sanders is in a protected class for his disability.

129.     R.C. § 4112 provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

130.     During his employment with GLS, Sanders was subjected to offensive and harassing conduct based on his disability from his superiors, coworkers, and/or customers.

131.     Defendant knew or should have known of the harassing conduct against Sanders.

132.     Defendant condoned, tolerated and ratified this harassing conduct.

133.     This harassing conduct was severe and/or pervasive.

134.     This harassing conduct was offensive to Sanders.

135.     This harassing conduct would also be offensive to any reasonable person.

136. This harassing conduct interfered with Sanders' ability to perform his job duties.

137. Customers and coworkers harassed Sanders based on his disability. GLS had knowledge of this harassment and failed to take any corrective or remedial action.

138. This harassment was based on Sanders' disability.

139. This harassing conduct was so severe and pervasive that it materially altered the conditions of Sanders' employment.

140. Sanders, with no other reasonable choice, was then forced to resign his employment.

141. Any reasonable person in Sanders' place would also have no choice but to resign due to the conduct.

142. Sanders' resignation was a constructive termination.

143. Defendant treated Sanders differently than other similarly situated employees based upon his disability.

144. Defendant violated R.C. § 4112 by treating Sanders differently from other similarly situated employees outside his protected class.

145. Defendant violated R.C. § 4112 by applying its employment policies in a disparate manner based on Sanders' disability.

146. Defendant violated R.C. § 4112 by applying its disciplinary policies in a disparate manner based on Sanders' disability.

147. Sanders incurred emotional distress damages as a result of Defendant's conduct described herein.

148. As a direct and proximate result of Defendant's failure to promote Sanders based upon disability discrimination, Sanders has suffered and will continue to suffer damages.

## COUNT VI: FAILURE TO PROMOTE BASED ON DISABILITY
## DISCRIMINATION
### (Plaintiff Sanders Only)

149.    Sanders restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

150.    Sanders is disabled. At all times relevant, Sanders was a member of a statutorily-protected class under R.C. §4112.14(B) for his disabilities.

151.    Throughout his employment, Sanders attempted to be promoted to a server at GLS.

152.    Defendant required Sanders apply for this promotion when it did not require applications for this promotion to other employees similarly-situated to Sanders.

153.    Sanders was fully qualified for this opportunity.

154.    Sanders was not given any interview for this position.

155.    Defendant gave no reason for the failure to promote or interview Sanders.

156.    Alternatively, Defendant's reason for failure to promote Sanders was pretextual.

157.    Defendant actually failed to promote Sanders based on his disabilities.

158.    Sanders' disabilities were a determinative factor in Defendant's decision not to promote Sanders.

159.    Upon information and belief, Defendant promoted people outside Sanders' protected disability class in place of Sanders.

160.    Defendant violated R.C. §4112.02 and R.C. § 4112.99 when it failed to promote Sanders based on his disability.

161.    As a direct and proximate result of Defendant's conduct, Sanders has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

14

## COUNT VII: RETALIATION
### (Plaintiff Noll Only)

162. Noll restates each and every paragraph of this Complaint, as if they were fully restated herein.

163. As a result of GLS' discriminatory conduct described above, Noll reported the sexual harassment that she was experiencing.

164. After Noll reported the sexual harassment, her supervisor (and aggressor) treated her worse than other employees and started giving her shifts less frequently.

165. Noll also madae additional complaints of discrimination near the end of her employment.

166. After those additional complaint, Defendant continued its retaliation against her for them.

167. GLS' actions were retaliatory in nature based on Noll's opposition to the unlawful discriminatory conduct in violation of R.C. § 4112.02(I).

168. As a direct and proximate result of GLs' retaliatory discrimination against and termination of Noll, she suffered and will continue to suffer damages.

## COUNT VIII: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS
### (Plaintiff Noll Only)

169. Noll restates each and every paragraph of this Complaint, as if they were fully restated herein.

170. Pursuant to 29 U.S.C. § 260 et seq., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

171. GLS is a covered employer under FMLA.

172. During her employment, Noll qualified for FMLA leave.

173.　During her employment, Noll was told that despite her doctor's note suggesting the contrary, she had to return to work before she was comfortable doing so or risk losing her job.

174.　When Noll forwarded on her doctor's notes to GLS, GLS shrugged them off and insisted that she report to work or be forced to resign and reapply.

175.　Therefore, GLS unlawfully interfered with Plaintiffs' exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

176.　As a direct and proximate result of GLS' conduct, Noll is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Noll and Sanders demand from GLS the following:

a) Issue a permanent injunction:

    i.　Requiring GLS to abolish discrimination, harassment, and retaliation;

    ii.　Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii.　Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv.　Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

      v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring GLS to expunge their personnel files of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Noll and Sanders for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Noll and Sanders' claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Matthew Bruce SBR (0099035)

Matthew G. Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM**
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

Attorneys for Plaintiffs Debra Noll and John
Sanders.

## JURY DEMAND

Plaintiffs Debra Noll and John Sanders demands a trial by jury by the maximum number of jurors permitted.

Matthew Bruce  SBR (0099035)
Matthew G. Bruce (0083769)

CERTIFIED COPY.
JAMES L. SPAETH, CLERK
WARREN COUNTY, OHIO
COMMON PLEAS COURT
BY _____
DEPUTY

19